# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GLEN FLORA DENTAL CENTER, LTD.,
et al.,

              Plaintiffs,

              v.

FIRST EAGLE BANK, et al.,

              Defendants.

Case No. 17-cv-9161

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiffs—five dental practices and their common management company, Dental Practice Development (DPD)—sue two DPD managers, alleging that those managers conspired with Defendant First Eagle Bank and one of its agents to defraud the practices out of more than $4 million. Plaintiffs sue under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*. and state-law causes of action.

In September 2018, this Court dismissed Plaintiffs' original complaint, finding that it failed to plausibly state RICO claims and giving Plaintiffs leave to replead. [71]. Plaintiffs subsequently filed their first amended complaint (FAC), [77] and Defendants now renew their motions to dismiss, [82] [85] [88] [91]. For the reasons explained below, this Court grants in part and denies in part First Eagle's and Francione's motions, and denies Kelliher's and Vihnanek's motions.

This Court presumes familiarity with, and incorporates by reference, its prior opinion granting Defendants' motions to dismiss Plaintiff's original complaint. [71]. Therefore, the Background section briefly revisits the facts in this case, and details only the additional allegations that Plaintiffs added in their FAC. Likewise, this Court will not repeat in detail its prior legal analysis or the required elements of each cause of action.

## I.    Background

Plaintiffs comprise five related dental practices—Glen Flora Dental Center, River West Smile Center, Oral Kare Network II Ltd., All Family Dental Ltd., Beverly Shores Smile Center Ltd.—and their management service, DPD. [77] ¶¶ 7–12, 17. They sue Larry Kelliher and Lenny Vihnanek, two former employees of DPD. *Id.* ¶¶ 15–16. They also sue First Eagle Bank and First Eagle's former employee, Mikki Francione, who is Vihnanek's sister-in-law. *Id.* ¶¶ 13–14.

Plaintiffs claim that sometime before 2010, Kelliher and Vihnanek hatched a scheme to steal money from Plaintiffs, and subsequently executed the scheme by diverting money from Plaintiffs' accounts. *Id.* ¶¶ 45–49. Kelliher and Vihnanek enlisted the help of Francione to carry out this scheme, *id.* ¶¶ 57–58, and between 2010 and June 2016, Vihnanek and Kelliher coordinated with Francione at First Eagle to prioritize payment and authorize checks benefitting themselves, their families, and personal creditors. *Id.* ¶¶ 62–63. Plaintiffs' principals fired Kelliher in June 2016 for "gross mismanagement" of Plaintiffs' accounts and discovered over "the next several months . . . the existence and extent of [Defendants' alleged] scheme."

*Id.* ¶¶ 215, 228.

While the original complaint asserted a Section 1962(c) RICO claim against each of the Defendants, *see* [1] ¶ 84, the FAC asserts that claim only against Kelliher and Vihnanek, [77] ¶ 230.  Plaintiffs also bring RICO conspiracy claims against all Defendants.  *See id.* ¶¶ 240, 248, 259, 268.  Plaintiffs' remaining claims sound in Illinois state-law.  *Id.* ¶¶ 279–314.

## II.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted."  *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

3

In evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But this Court need not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

As to the fraud-based portions of their claims, Rule 9(b) also demands that claimants "state with particularity the circumstances constituting fraud." Particularity requires that plaintiffs "describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted); *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001) ("allegations of fraud" within a civil RICO complaint are "subject to the heightened pleading standard" of Rule 9(b)). Although different cases require different levels of detail for a complaint to satisfy Rule 9(b), *id.* at 442, plaintiffs must provide "precision and some measure of substantiation," *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

## III. Analysis

### A.    Counts I–V: RICO Claims

The RICO Act permits private civil plaintiffs to sue under § 1964(c) for violations of the statute that proximately damage the plaintiff's business or property. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265–68 (1992). To establish a violation of § 1962(c), Plaintiffs must allege: (1) conduct; (2) of an enterprise; (3)

through a pattern; (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Defendants' renewed motions to dismiss argue that Plaintiffs' FAC insufficiently establishes the pattern prong for a § 1962(c) violation. [83] at 16–17; [86] at 19–21; [89] at 14–24; [91] at 5–8. A pattern of racketeering activity "consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). Plaintiffs must also satisfy the "continuity plus relationship" test: that is, Plaintiffs must show that the predicate acts relate to each other and present a "threat of continuity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236–50 (1989). To establish continuity, Plaintiffs must show either "open-ended" continuity, meaning that the predicate acts have no obvious termination point, or "closed-ended" continuity, meaning the acts have ceased but previously extended over "a substantial period" of time. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992).

### 1. RICO Pattern: Predicate Acts

As stated in its prior opinion, the original complaint's primary deficiency concerned Plaintiffs' failure to plead the predicate acts of wire fraud with sufficient particularity. [71] at 12. This Court finds that the FAC cures this deficiency.

In the FAC, Plaintiffs assert predicate acts of mail fraud under 18 U.S.C. § 1341 and interstate transfers of stolen money under 18 U.S.C. § 2314. [77] ¶¶ 106–14, 115–24. And this time, unlike the original complaint, Plaintiffs allege with

specificity the fraud-based transactions purportedly underlying the RICO scheme. *See id.* ¶¶ 105, 111, 121; [77-3].

For instance, Plaintiffs allege that Kelliher transacted 260 times with American Express between February 26, 2010 and June 27, 2016 to pay his personal expenses from Plaintiffs' accounts. [77] ¶ 111(a). An exhibit to the Amended Complaint details each American Express transaction by account (name and number), date, transaction type, and amount. [77-3] at 10–13. To take another example, the FAC asserts that Kelliher transacted twelve times with the University of Southern California (USC) via online payments from Plaintiffs' accounts between June 2013 and May 2015 totaling $21,499. [77] ¶ 111(h). These transactions, according to Plaintiffs, benefitted Kelliher and his daughter, who attended USC. *Id.* Additionally, an exhibit to the FAC sets forth each transaction with USC, including the amount of each transaction, date, transaction type, and account number. [77-3] at 37. These representative examples, and others in the FAC, demonstrate that Plaintiffs have pled with particularity multiple predicate acts committed within a ten-year period. *Jennings*, 495 F.3d at 472.

Despite this, Kelliher argues that Plaintiffs omit "crucial transactions of loans" that he made to them, which ostensibly would undermine the plausibility of the purported RICO narrative while proving that Kelliher conducted the transactions to repay himself. [91] at 6. This Court, however, remains confined to Plaintiffs' current allegations, which it must accept as true. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (on a motion to dismiss, courts must take as true all well-

pled factual allegations). The allegations plausibly establish that Kelliher engaged in the transactions for non-legitimate, fraudulent purposes.

Vihnanek also contends that the Section 1962(c) claim should be dismissed against him, because the FAC does not allege that he "personally conducted even one" of the allegedly fraudulent transactions. [86] at 12. This argument misses the mark, because it erroneously assumes that Vihnanek must have personally performed the mailings or interstate transfers to incur liability.

Contrary to Vihnanek's assumption, a mail fraud defendant "d[oes] not have to mail the check himself to be guilty of mail fraud. He only needed to cause it to be mailed or to commit some act that would cause the mailing of the check to be reasonably foreseeable." *United States v. Swan*, 250 F.3d 495, 500 (7th Cir. 2001). Similarly, a person charged under § 2314 "need not actually have transported the [stolen] property across state lines . . . so long as he or she caused or induced another to do so." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1513 (N.D. Ill. 1990). Here, Plaintiffs allege that between 2010 and 2016, Vihnanek (along with Kelliher) spoke regularly with Francione and instructed her to pay checks to personal creditors and family members of Kelliher. [77] ¶¶ 64–65. Plaintiffs also allege that Vihnanek directed Kelliher to initiate the electronic transfers and write checks from Plaintiffs' accounts. *Id.* ¶¶ 106–07. These allegations sufficiently establish at the pleadings stage that Vihnanek caused others to perform the actual mailings or money transfers.

## 2. RICO Pattern: Continuity

Beyond pleading the requisite predicate acts, this Court must also determine in this instance whether Plaintiffs' allegations sufficiently demonstrate closed-ended continuity.

To determine whether a plaintiff has demonstrated closed-ended continuity, courts employ a multi-factor test, considering: "(1) the number and variety of predicate acts; (2) the length of time over which they were committed; (3) the number of victims; (4) the presence of separate schemes; and (5) the occurrence of distinct injuries." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 689 (N.D. Ill. 2012) (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). Of these factors, duration constitutes the most important element. *Jennings*, 495 F.3d at 474.

In its prior opinion, this Court found that only one factor—duration—favored finding closed-ended continuity, and thus cautioned Plaintiffs to plead additional facts to establish closed-ended continuity in their amended complaint. [71] at 13–15. As discussed below, Plaintiffs' FAC states additional facts in support of two other factors, thus tipping the scales in favor of finding closed-ended continuity (at least at this stage of the proceedings).

Factor 1: Number and Variety of Predicate Acts. In the FAC, Plaintiffs alleges the predicate acts as "interstate transfer[s] of stolen money" and "mail fraud," rather than only as wire fraud, as alleged in the original complaint. *Compare* [77] ¶¶ 106–24 *with* [1] ¶¶ 68–72, 90–91. Even though the allegations entail multiple violations of different criminal statutes, the FAC makes clear that the underlying conduct alleged

8

remains the same as that in the original complaint—that is, Kelliher embezzled money from Plaintiffs by initiating electronic transfers and writing checks from DPD's accounts. *Compare* [77] ¶¶ 106–08, 115–16 *with* [1] ¶¶ 77, 83.

Accordingly, the variety factor still weighs against finding closed-ended continuity. *Jennings*, 495 F.3d at 475 (finding that a complaint lacked variety where the plaintiff attempted to establish a wide variety of predicate acts by simply alleging that "individual acts violate multiple statutes"); *see also CIB Bank v. Esmail*, No. 04 C 4870, 2004 WL 3119027, at *5 (N.D. Ill. Dec. 28, 2004) ("Where a plaintiff alleges a multiplicity of predicate acts, multiple instances of the same criminal act of a single scheme usually do not meet the 'pattern of racketeering activity' requirement under RICO."); *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 942 (N.D. Ill. 2002) (seventy-two acts of mail fraud and money laundering—all related to a single embezzlement scheme—did not demonstrate variety).

<u>Factor 2: Duration</u>. Like the original complaint, the FAC alleges a scheme that lasted from at least 2010 to 2016. [77] ¶¶ 98, 244; [1] ¶ 74. Six years constitutes a substantial period of time for RICO continuity. *Morgan*, 804 F.2d at 976. Therefore, this factor continues to weigh strongly in favor of finding continuity.

<u>Factor 3: The Number of Victims</u>. In its prior opinion, this Court found that this factor militated against finding closed-ended continuity because Plaintiffs did not allege any other victims besides themselves, and as closely related entities, Plaintiffs constitute only one victim for RICO purposes. [71] at 14.

In addition to Plaintiffs, the FAC identifies another alleged victim: AFO, a

dental group co-owned by Kelliher and Vihnanek, among others.   [77] ¶¶ 127–42.

According to the FAC, Vihnanek served as president of AFO, and Kelliher did the books

for AFO.  *Id.* ¶¶ 129–30.  Sometime prior to June 2014, other AFO partners discovered

that Kelliher diverted about $142,000 in AFO funds held at First Eagle.  *Id.* ¶ 134.

AFO subsequently fired Kelliher around December 2014; AFO also removed Vihnanek

as president in 2016 or 2017 because it suspected that Vihnanek knew of and protected

Kelliher's misconduct.  *Id.* ¶¶ 137, 141.  Based upon Plaintiffs' allegations that AFO

existed as a parallel dental practice management service, *id.* ¶ 127, and that First

Eagle and Francione similarly managed AFO's accounts, from which Kelliher diverted

funds, *id.* ¶¶ 135–36, this Court infers that Defendants victimized AFO in the same

way they did Plaintiffs.  AFO thus constitutes another plausible victim.

Factor 4:  The Number of Schemes.  In their brief, Plaintiffs contend that the

FAC now "identifies at least two known schemes"—one involving Plaintiffs, and the

other involving AFO.  [107] at 16.  But at oral argument, Plaintiffs concede that they

did not know whether Defendants' conduct toward AFO constituted the "same," or

rather a "related" but separate, scheme as the one involving Plaintiffs.  Based upon

Plaintiffs' equivocation at oral argument, and the FAC's allegations—which cast AFO

as another victim in the same scheme as the one involving Plaintiffs—this Court does

not find the existence of more than one alleged scheme.

Factor 5:  The Number of Injuries.  Finally, as this Court explained in its prior

opinion, even though Plaintiffs allege numerous transactions, each injury "stemmed

from a single scheme to defraud involving similar predicate acts."  [71] at 15 (quoting

*Meyer Material*, 188 F. Supp. 2d at 943). Such injuries to Plaintiffs themselves do not constitute "distinct" injuries, but rather "cumulative" harms. *Id.* The FAC changes this analysis, however, because Plaintiffs have now alleged a distinct injury to a new victim—AFO. *See* [77] ¶¶ 127–42. Specifically, Plaintiffs claim that Defendants stole approximately $142,000 from AFO's accounts with First Eagle. *Id.* ¶ 134. Thus, the FAC demonstrates the existence of at least two separate injuries.

In sum, the FAC sets forth additional facts demonstrating closed-ended continuity. Plaintiffs have plausibly identified another victim, AFO, and AFO's distinct injury. Thus, two other factors now favor finding closed-ended continuity. And most importantly, duration continues to weigh strongly in Plaintiffs' favor. The Seventh Circuit has instructed that "duration [ ] is perhaps the closest thing we have to a bright-line continuity test." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992). The Supreme Court has likewise suggested that predicate acts which occur with frequency over a six-year period suffices, on its own, to show closed-ended continuity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 250 (1989) ("petitioners claim that the racketeering predicates occurred with some frequency over at least a 6-year period, which may be sufficient to satisfy the continuity requirement."). In light of the foregoing, and because Plaintiffs now allege predicate acts with particularity as required under Rule 9(b), this Court finds that Plaintiffs have sufficiently alleged closed-ended continuity and satisfied the pattern prong of a Section 1962(c) violation at this stage of the proceedings.

### 2. RICO Conspiracy

Plaintiffs also assert a RICO conspiracy claim against all Defendants in Count II of the FAC. [77] ¶¶ 239–46. The "touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998).

Mere association with an enterprise, however, does not suffice to demonstrate agreement. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 831 (7th Cir. 2016). Rather, Plaintiffs must plead that: (1) Defendants agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity; and (2) Defendants further agreed that someone would commit at least two predicate acts to accomplish these goals. *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734–35 (7th Cir. 2014) (citation omitted). In addition, to incur liability under Section 1962(d), a co-conspirator must have known about the conspiracy. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017). In the context of this case, Plaintiffs may plead knowledge in two ways: actual knowledge or willful blindness. *Id.*

Each Defendant advances separate arguments in support of dismissal of this count. This Court addresses each Defendant's argument separately.

### a. Vihnanek

Vihnanek argues that Plaintiffs fail to plead that he had "actual knowledge of the alleged conduct of Kelliher and Mikki to conceal the scheme by coordinating

which checks to honor and which to dishonor." [86] at 26. This Court disagrees, because the FAC contains allegations that Kelliher and Vihnanek actively coordinated with Francione about which checks to honor, and which checks not to honor. [77] ¶ 59. Plaintiffs further allege that on a near daily basis, Kelliher and/or Vihnanek instructed Francione to pay checks to personal creditors and Kelliher's family members. *Id.* ¶¶ 64–65. Taking these allegations as true, this Court finds that Plaintiffs sufficiently plead knowledge as to Vihnanek.

### b. Francione

Francione similarly argues that Plaintiffs fail to sufficiently plead her knowledge of the purported scheme, contending that the FAC asserts that she merely knew of Plaintiffs' overdrawn accounts and outstanding checks. [83] at 18–19. This argument does not square with the FAC's allegations, however, because Plaintiffs plead that Francione carried out payments that she *knew* "were not business expenses" of Plaintiffs, but rather benefitted Kelliher's personal creditors and family members. [77] ¶ 65.

Francione also contends that the allegations remain insufficient to show that she agreed to participate in the alleged conspiracy, as they characterize Francione's conduct as nothing more than "a banker acting as a banker." [83] at 23. On this point, Francione relies heavily upon *Domanus*, where the Seventh Circuit found an insufficiently pled conspiratorial agreement as to the lawyer-defendants because, among other things, the lawyers did not receive "any extra money" from the alleged conspiracy. 847 F.3d at 482. But here, unlike in *Domanus*, Plaintiffs allege that

13

Francione (along with First Eagle) agreed to maintain the scheme so that First Eagle could enjoy additional revenue "large enough to provide annual bonuses to bank employees." [77] ¶ 102. Accordingly, this Court infers that Francione's role went beyond a "banker acting as a banker," because she did, according to the FAC, reap financial benefit by agreeing to join the alleged conspiracy.

Moreover, *Domanus* undermines Francione's argument that she did not agree to participate in the alleged conspiracy, because the Seventh Circuit instructed there that courts may infer an agreement "when the acts performed by the alleged members of the conspiracy are unlikely to have been done alone." 847 F.3d at 482. Here, the very nature of the alleged conspiracy confirms that Kelliher or Vihnanek could not have carried out the alleged scheme alone. Instead, the allegations demonstrate they needed Francione, a First Eagle employee, to facilitate the scheme.

### c. Kelliher

Kelliher's argument requires little analysis. He contends that Plaintiffs fail to allege the requisite agreement because the FAC describes "mere interactions" between Kelliher and Francione "that could easily be and are legitimate conduct." [91] at 8–9. This contention ignores the myriad allegations detailing illegitimate conduct, including that Francione aided Kelliher's transactions for nefarious, rather than legitimate, purposes. *See, e.g.*, [77] ¶¶ 62–68. Further, as discussed above, the FAC alleges a scheme that depends upon the cooperation and coordination among Kelliher, Vihnanek, and Francione, none of whom could have accomplished the

alleged predicate acts alone. This Court infers agreement under these circumstances. *See Domanus*, 847 F.3d at 482.

### d. First Eagle

The FAC alleges two counts of RICO conspiracy against First Eagle: one for direct liability (Count IV), and the other for vicarious liability (Count V). [77] ¶¶ 258–78.

On the direct liability claim, First Eagle argues that the FAC remains deficient in alleging that First Eagle agreed to join the conspiracy. [89] at 30. But, like the other Defendants, the FAC contains facts demonstrating not only that First Eagle facilitated the scheme, but that First Eagle benefitted from the alleged scheme because it received "significant income" from fees that it received from overdraft activities on Plaintiffs' accounts. *See* [77] ¶¶ 91–99. At this stage in the proceedings, this Court infers agreement from these allegations. *Domanus*, 847 F.3d at 482; *see also Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1075 (N.D. Ill. 1995).

First Eagle also argues the FAC fails to demonstrate that it had the requisite knowledge. [89] at 26–29. On this issue, Plaintiffs concede they do not plead actual knowledge, but rather, willful blindness as to First Eagle. [107] at 36. Willful blindness requires that a defendant "believe that there is a high probability that a fact exists" and "take deliberate actions to avoid learning of that fact." *Domanus*, 847 F.3d at 480 (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). This Court finds that Plaintiffs adequately allege willful blindness because they claim that First Eagle executives received weekly reports regarding overdraft

charges, but despite seeing the "red flags" for criminal activity, they allowed the illegal scheme to continue so that First Eagle could financially benefit. [77] ¶¶ 86–105.

First Eagle also argues that Count V, which seeks to hold First Eagle liable for RICO conspiracy on a vicarious liability theory, should be dismissed. [89] at 31–33. This Court agrees, because courts in this district apply vicarious liability to RICO claims only "where the corporation plays the role of the central figure or aggressor in the alleged scheme." *Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 786 (N.D. Ill. 2015) (quoting *Nystrom v. Associated Plastic Fabricators, Inc., Profit-Sharing & Sav. Plan & Tr.*, No. 98 C 134, 1999 WL 417848, at *8 (N.D. Ill. June 18, 1999)). The FAC makes plain that only Kelliher could be deemed the central figure or aggressor in the alleged conspiracy. And, in their response, Plaintiffs appear to concede that First Eagle served as neither the central figure nor aggressor in the purported scheme. [107] at 43 (arguing only that First Eagle "reaped enormous financial benefits from the scheme."). Given the absence of any alternate accomplice or conspiratorial theory, this Court thus grants First Eagle's motion with respect to Count V.

## B. Counts VI–VIII: State-Law Claims

### 1. Counts VI and VIII: Breach of Fiduciary Duty

Count VI alleges common law breach of fiduciary duty against Kelliher, Vihnanek, and Francione. [77] ¶¶ 279–88. Count VIII alleges breach of the Illinois Fiduciary Obligations Act (FOA), 760 ILCS 65/8, against First Eagle and Francione.

*Id.* ¶¶ 296–314. All four Defendants move to dismiss the fiduciary claims. [91] at 9–10; [86] at 28–31; [83] at 25–27; [89] at 33–36.

### a. Illinois Fiduciary Law

To state a common law breach of fiduciary claim, Plaintiffs must allege: (1) a fiduciary duty exists; (2) breach of the duty; and (3) the breach proximately caused Plaintiffs' injuries. *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. App. Ct. 2000)). Under Illinois law, "a bank generally owes no fiduciary duty to its depositors." *Miller v. Am. Nat. Bank & Tr. Co. of Chicago*, 4 F.3d 518, 520 (7th Cir. 1993). An exception exists, however, where Plaintiffs demonstrate that they "placed trust and confidence" in the bank, and that the bank "gained influence and superiority" over them. *Geimer v. Bank of Am., N.A.*, 784 F. Supp. 2d 926, 932 (N.D. Ill. 2011) (internal quotation marks omitted).

Additionally, the Illinois FOA assigns liability to a bank dealing with a fiduciary acting in his fiduciary capacity. *Paloian v. F.D.I.C.*, No. 11 C 50017, 2011 WL 5325562, at *4 (N.D. Ill. Nov. 2, 2011); *Crawford Supply Grp., Inc. v. LaSalle Bank, N.A.*, No. 09C2513, 2010 WL 320299, at *5 (N.D. Ill. Jan. 21, 2010). The FOA Section 8 provides, in pertinent part:

> If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith.

760 ILCS 65/8. In other words, the FOA imposes liability upon bankers where a fiduciary misappropriates his principal's funds, and "the bank ha[d] actual knowledge of the fiduciary's misappropriation" or "knowledge of sufficient facts that its action in paying the checks amount[ed] to bad faith." *Geimer*, 784 F. Supp. 2d at 932 (quoting *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987)); *Mikrut v. First Bank of Oak Park*, 832 N.E.2d 376, 385 (Ill. App. Ct. 2005) (bad faith requires showing that the bank "suspected" the fiduciary acted improperly, yet "deliberately refrained from investigating" so the bank could "avoid knowledge" that its fiduciary acted improperly).

### b. Common Law Claim Against Francione

Francione urges dismissal of the common law fiduciary duty claim against her, arguing that as a mere banker, she did not owe any fiduciary duties to Plaintiffs. [83] at 25–26. This Court agrees that she did not constitute a direct fiduciary to Plaintiff, because the FAC does not demonstrate that Plaintiffs themselves "placed trust and confidence" in her, or that Francione "gained influence and superiority" over them. *Geimer*, 784 F. Supp. 2d at 932. Rather, the allegations demonstrate that Plaintiffs' relationship with Francione constituted a mere banker-client relationship. *See id.* (allegations demonstrating a mere creditor-debtor relationship did not rise to level of fiduciary relationship). Thus, this Court dismisses Count VI against Francione only.

### c. FOA Claim Against Francione and First Eagle

Francione and First Eagle argue that this Court must dismiss Plaintiff's FOA claim (Count VIII), contending that Plaintiffs fail to plead actual knowledge or bad faith against them. [83] at 28; [89] at 33–36. This Court disagrees, because the FAC contains sufficient allegations demonstrating that Francione had actual knowledge that the transactions were fraudulent, *see* [77] ¶¶ 56–69, and that First Eagle suspected that Kelliher and Vihnanek acted improperly, yet turned a blind eye to their conduct to avail themselves of overdraft fees, *see id.* ¶¶ 86–102. Thus, this Court denies Francione's and First Eagle's motions to dismiss Count VIII.

### d. Common Law Claims Against Kelliher and Vihnanek

The remaining Defendants—Kelliher and Vihnanek—do not contest that they owed common law fiduciary duties to Plaintiffs. Rather, Kelliher argues that Plaintiffs do not adequately allege breach of any duty, repeating his argument that the FAC presents only a one-sided picture, omitting facts that would establish the legitimacy of his conduct. [91] at 10. This Court finds no merit to this argument for the reasons stated above, including that this Court must take the FAC's allegations as true at this juncture. *AnchorBank*, 649 F.3d at 614.

Vihnanek also reiterates his arguments that he lacked personal involvement in the alleged fraudulent scheme, and thus could not have breached any duty to Plaintiffs. [86] at 28–29. This Court again rejects Vihnanek's arguments, because, as explained above, the FAC contains sufficient allegations of Vihnanek's involvement in the scheme.

Vihnanek then argues that any claim premised upon conduct post-dating his termination in 2012 should be dismissed. [86] at 30. True, an employee's fiduciary duties to his employer ceases upon the termination of the employment relationship. *Dames & Moore v. Baxter & Woodman*, Inc., 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998). Plaintiffs argue, however, that Vihnanek remained liable after his termination under an aiding and abetting theory. [107] at 47. Under Illinois law, to state a claim for aiding and abetting, Plaintiffs must allege: "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). The FAC here alleges these elements by describing how, even after his termination, Vihnanek maintained electronic access and control of Plaintiffs' accounts with First Eagle. [77] ¶¶ 178, 195–04. Based upon these allegations, this Court finds plausible that Vihnanek may have aided and abetted Kelliher's breach of his fiduciary duty after Vihnanek's own termination, and thus declines to bar any post-2012 breach of fiduciary claim against Vihnanek.

### 2. Count VII: Conversion

Finally, to prevail on their conversion claim against Kelliher and Vihnanek, Plaintiffs must plead three elements: (1) tortious conversion of a chattel; (2) a right to property in it; and (3) an absolute right to immediate possession. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co.*, 29 F.3d 337, 340 (7th Cir. 1994).

Kelliher and Vihnanek advance no new arguments in urging dismissal of this claim. Kelliher contends that Plaintiffs' conversion claim fails because they present only "one side of a loan agreement" between himself and Plaintiffs. [91] at 11. Vihnanek also disclaims any fraudulent conduct, arguing that Plaintiffs fail to explain how any payments listed in the FAC constitute improper transactions. [111] at 31–32. For the reasons discussed above, this Court rejects these arguments. Count VII stands as to Kelliher and Vihnanek.

## IV. Conclusion

For the reasons explained above, this Court dismisses Count V against First Eagle, and dismisses Count VI against Francione only. As such, this Court grants in part those portions of Francione's and First Eagle's motions to dismiss [82] [88], and denies their motions in all other respects. This Court denies Kelliher's and Vihnanek's motions to dismiss. [85] [91]. This Court sets a case management conference for September 25, 2019 at 10:15 a.m., at which time the parties should come prepared to set all case management dates, including close of fact and expert discovery, dispositive motion briefing deadlines, and trial.

Dated: September 23, 2019

Entered:

John Robert Blakey
United States District Judge

21