## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GLEN FLORA DENTAL CENTER, LTD.,
et al.,

                Plaintiffs,

                v.

FIRST EAGLE BANK, et al.,

                Defendants.

Case No. 17-cv-9161

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiffs—five dental practices and their common management company, Dental Practice Development (DPD)—sue two of their former managers, Defendants Larry Kelliher and Lenny Vihnanek, alleging that they conspired with Defendant First Eagle Bank and one of its agents, Mikki Francione, to defraud the practices out of more than $4 million. [77] at ¶ 2. Plaintiffs asserted claims against Defendants for violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.* (Count I), and conspiracy to violate the RICO Act (Count II–V). [77] at ¶¶ 229–78. Plaintiffs also asserted state-law claims for breach of fiduciary duty (Count VI), conversion (Count VII), and breach of the Illinois Fiduciary Obligation Act (IFOA), 60 ILCS 65/8 (Count VIII). *Id.* at ¶¶ 279–314.

After Defendants moved to dismiss these claims, this Court issued an opinion granting in part and denying in part First Eagle's and Francione's motions and denying Kelliher's and Vihnanek's motions. [116]. As a result, the RICO claim (as to Kelliher and Vihnanek) and RICO conspiracy allegations (as to all Defendants)

proceeded. *Id.* at 11, 16. The claims for breach of fiduciary duty and conversion also proceeded (as to Kelliher and Vihnanek), along with breach of the IFOA (as to First Eagle and Francione). *Id.* at 18–21.

Defendants then answered and asserted several amended affirmative defenses to Plaintiffs' first amended complaint, [162] [163] [164] [165], all of which Plaintiffs now move to strike under Federal Rule of Civil Procedure 12(f), [166] [167] [168] [169]. For the reasons explained below, this Court grants in part and denies in part Plaintiffs' motions. The Court also resolves a pending motion for clarification [243] below.

## I.    Background

### A.    First Amended Complaint

This Court presumes familiarity with the first amended complaint's allegations, as discussed in its prior opinion on Defendants' motions to dismiss, *see* [116], and thus only briefly revisits those facts to provide context to its analysis on Plaintiffs' motions to strike.

Plaintiffs comprise five related dental practices in the Chicago area and their management service, DPD. [77] at ¶¶ 7–12, 17. Defendant Vihnanek served as DPD's President from 1995 to 2012. *Id.* at ¶ 16. Defendant Kelliher, a friend of Vihnanek, held numerous executive positions in DPD, including Chief Financial Officer and ultimately President. *Id.* at ¶ 15. In these positions, Vihnanek and Kelliher controlled the management and operation of DPD, including its bank account and bank transactions for each of the practices. *Id.* at ¶ 39. Kelliher also

handled bookkeeping duties and served as a signatory on the accounts of DPD and the practices. *Id.* at ¶¶ 40–42.

Plaintiffs assert that Defendants Kelliher and Vihnanek hatched a scheme to steal money from Plaintiffs and executed the scheme by diverting money from Plaintiffs' accounts. *Id.* at ¶¶ 1, 45–49. Plaintiffs also claim that Kelliher and Vihnanek enlisted the help of Defendant Francione, Vihnanek's sister-in-law and an employee of First Eagle, to "conceal the cash-flow problems caused by the diversion of funds and prevent it from being discovered." *Id.* at ¶¶ 45–49, 57–58.

Plaintiffs claim that between January 2010 and June 2016, as a result of the alleged coordination between the four Defendants, Kelliher and Vihnanek diverted an estimated $4,427,117.27 from Plaintiffs to themselves, their families, and their personal creditors, via roughly 4,000 separate transactions. *Id.* at ¶¶ 48, 125, 237. The alleged scheme frequently overdrew the bank accounts, which resulted in legitimate bills of the Practices going unpaid due to insufficient funds (NSF). *Id.* at ¶¶ 50–52. To conceal such problems, Kelliher coordinated with Francione almost daily between January 2010 and June 2016 about which checks from Plaintiffs First Eagle should honor. *Id.* at ¶¶ 59–61. In furtherance of the alleged scheme, Plaintiffs claim that Francione "carried out" Kelliher's "instructions" and deliberately stopped payment on the practices' legitimate bills to pay Vihnanek's and Kelliher's personal financial obligations. *Id.* at ¶¶ 61, 66. Any time a transaction resulted in an account overdraft, First Eagle automatically charged Plaintiffs an overdraft/NSF fee pursuant to standard protocol. *Id.* at ¶¶ 71, 74.

3

### B.  The Affirmative Defenses

#### 1.  Kelliher

Kelliher's amended answer asserts fourteen affirmative defenses.  [165].  His first and second affirmative defenses assert that the statute of limitations has run on Counts I and II concerning the alleged RICO and RICO conspiracy violations and Counts VI and VII on Plaintiffs' state law claims, respectively.  *Id.* at 5–7.[1]  Kelliher next asserts that *in pari delicto* (third affirmative defense), laches (fourth), equitable estoppel (fifth), consent (sixth), ratification (seventh), waiver (eight), failure to mitigate (nine), the doctrine of unclean hands (tenth), and ratification (fourteenth) bar Plaintiffs' claims on all counts against him (Counts I, II, VI, VII).  *Id.* at 7–14, 18.[2]  Kelliher also claims that lack of proximate causation (eleventh), contributory/comparative negligence (twelfth), and Plaintiffs' own negligence (thirteenth) bar all counts against him.  *Id.* at 14–17.

#### 2.  Vihnanek

Vihnanek asserts nine affirmative defenses to the FAC.  [163].  Like Kelliher, Vihnanek's first and second affirmative defenses assert that the statute of limitations has run on the RICO and state-law counts, respectively.  *Id.* at ¶¶ 40–56.  Vihnanek next asserts that authorization/ratification (third affirmative defense), consent (fourth), failure to mitigate (fifth), laches (sixth), and the doctrine of unclean hands (seventh) bars all counts against him (Counts I, II, VI, and VII).  *Id.* at ¶¶ 57–95.

---

[1] Because Kelliher repeats the numbering of many paragraphs within his amended affirmative defenses [165], this Court cites to page numbers instead of paragraph numbers.

Vihnanek also asserts that intervening acts (eighth) and proximate cause (ninth) bar Plaintiffs' state-law claims in Count VI and VII. *Id.* at ¶¶ 96–116.

### 3.  First Eagle and Francione

Francione and First Eagle separately assert the same fourteen affirmative defenses. [162] [164]. Their third affirmative defenses claim that the IFOA bars Plaintiffs' state-law claim in Count VIII. [164] at ¶¶ 40–41; [162] at ¶¶ 40–41. Concerning Counts IV and VIII (as to First Eagle) and Counts III and VIII (as to Francione), they also assert the following affirmative defenses: statute(s) of limitations as to Plaintiffs' RICO conspiracy and state-law claims (first affirmative defense); the UCC (second); authorization/ratification (fourth); the doctrine of actual authority (fifth); the doctrine of apparent authority (sixth); the doctrine of consent (seventh); failure to mitigate damages (eighth); lack of proximate causation (ninth); intervening acts (tenth); waiver (eleventh); *in pari delicto* (twelfth); equitable estoppel (thirteenth); and breach of contract (fourteenth). [162] at ¶¶ 34–39, 42–77; [164] at ¶¶ 34–39, 42–77.

## II.  Legal Standard

Under Rule 12(f), this Court may strike a party's "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). While motions to strike "are generally disfavored because of the likelihood that they may only serve to delay proceedings," when "striking portions of a pleading 'remove[s] unnecessary clutter from the case,' the motion may 'serve to expedite, not delay.'" *Naylor v. Streamwood Behavioral Health Sys.,* No. 11 C 50375,

2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (quoting *Heller Fin. Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989)).

An affirmative defense must satisfy three criteria to survive a motion to strike under Rule 12(f): (1) it must be properly pleaded as an affirmative defense; (2) it must be adequately pleaded under Rules 8 and 9; and (3) it must withstand a Rule 12(b)(6) challenge. *Hughes v. Napleton's Holdings, LLC*, No. 15 C 50137, 2016 WL 6624224, at *2 (N.D. Ill. Nov. 9, 2016); *Renalds v. S.R.G. Rest. Grp.,* 119 F. Supp. 2d 800, 802–03 (N.D. Ill. 2000).

## III.   Analysis of Affirmative Defenses

Plaintiffs move to strike all of Defendants' amended affirmative defenses. [166] at 2; [167] at 2–4; [168] at 2–4; [169] at 3–9.  This Court addresses each disputed affirmative defense below.

### A.   Statute of Limitations

#### 1.   RICO and RICO Conspiracy: All Defendants

Plaintiffs move to strike Kelliher's and Vihnanek's first affirmative defenses that the statute of limitations bars (in whole or in part) the RICO and RICO conspiracy counts, [166] at 3–4; [169] at 3–4, as well as First Eagle's and Francione's first affirmative defenses that the statute of limitations bars (in whole or in part) the RICO conspiracy counts, [167] at 6–8; [168] at 6–7.

A four-year statute of limitations governs claims under the RICO Act.  *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 926 (7th Cir. 2015); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010).  The limitations period begins to run when "the plaintiffs discover, or

should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009); *see also Sidney Hillman*, 782 F.3d at 926.

Plaintiffs argue that Defendants insufficiently plead their statute of limitations defenses by failing to allege facts suggesting that Plaintiffs knew or should have known that they were injured prior to May 25, 2013, four years before they filed their complaint. [166] at 3–4; [167] at 7; [168] at 7; [169] at 3–4. Not so. Each Defendant alleges that, at all relevant times, Plaintiffs received monthly bank statements and maintained the ability and duty to monitor them for unauthorized activity but failed to do so, even though the account statements would have revealed irregularities and other suspicious activities. [162] at ¶¶ 17–29; [163] at ¶¶ 16–32; [164] at ¶¶ 17–29; [165] at ¶¶ 30–3. Taken as true, these facts demonstrate that Plaintiffs possessed at least constructive notice that Defendants fraudulently transacted on their accounts since the beginning of the alleged scheme in 2010. This Court thus denies Plaintiffs' motions as to the Defendants' RICO and RICO conspiracy statute of limitations defenses.

### 2. UCC Statute of Repose: Francione and First Eagle

Francione and First Eagle assert as part of their first affirmative defenses that the statute of repose under the UCC, 810 ILCS 5/4-406(f), bars Plaintiffs' IFOA claim. [162] at ¶ 35; [164] at ¶ 35. In Illinois, 810 ILCS 5/4-406 governs the relationship between a bank and customer and defines "the bank customer's responsibility to examine its statement of account from the bank and promptly discover and report

any unauthorized payments." *Napleton v. Great Lakes Bank, N.A.*, 945 N.E.2d 111, 114 (Ill. App. Ct. 2011). Subsection 406(f) further provides that a bank customer's "failure to discover and report an unauthorized signature within one year from the time the bank makes available to the customer a statement of account and accompanying items precludes the customer's assertion of a claim against the bank." *Euro Motors, Inc. v. Sw. Fin. Bank & Tr. Co.*, 696 N.E.2d 711, 716 (Ill. App. Ct. 1998) (internal quotation marks omitted).

Plaintiffs argue that Defendants misplace reliance upon Section 406(f) because it only applies when a bank acts with ordinary negligence and not bad faith, as Plaintiffs allege. [167] at 5; [168] at 5. Plaintiffs point to their own allegations that First Eagle "deliberately and intentionally ignored warning signs and acted in bad faith in order to continue to collect NSF fees and keep its revenue stream going from these accounts." [77] at ¶¶ 89–90, 313.

True, Section 406(f) bars claims only if a bank acts in "good faith" when "paying the items on the statement." *Falk v. N. Tr. Co.*, 763 N.E.2d 380, 387 (Ill. App. Ct. 2001). And Plaintiffs might ultimately prevail on their argument if they can demonstrate that Defendants acted in bad faith. But here, Defendants in their Answers (which they incorporate into their Amended Affirmative Defenses) specifically refute and deny Plaintiffs' assertions that they: (1) possessed knowledge that Kelliher and Vihnanek misused any funds; and (2) acted in bad faith. [127] at ¶¶ 68, 313; [128] at ¶¶ 303–04. At this stage, this Court must take these allegations as true, *Suburban Teamsters of N. Illinois Welfare & Pension Funds v. Hope Cartage,*

8

*Inc.*, No. 02 C 8775, 2003 WL 22116201, at *1 (N.D. Ill. Sept. 12, 2003), and thus declines to strike First Eagle's and Francione's assertions that Section 406(f) bars Count VIII.

### 3.    IFOA:  Francione and First Eagle

Plaintiffs move to strike First Eagle's and Francione's assertions in their first affirmative defenses that the five-year statute of limitations applicable to the IFOA time-bars that claim to the extent premised upon any allegations of misconduct occurring before May 25, 2012.  [167] at 5–6; [168] at 5–6.

The parties do not dispute that the five-year statute of limitations in 735 ILCS 3/13-205—which provides that a claim "shall be commenced within 5 years next after the cause of action accrued"—applies to Plaintiffs' IFOA claim in Count VIII. Plaintiffs also do not dispute the applicability of the discovery rule, which provides that the cause of action accrues "when the plaintiff knew or reasonably should have known of the injury and that it was wrongfully caused."  *Fuller Family Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 756 (Ill. App. Ct. 2007).  As discussed above, First Eagle and Francione both sufficiently allege that Plaintiffs possessed constructive notice that Vihnanek and Kelliher engaged in fraudulent transactions before the 5-year lookback period.  Thus, Defendants plausibly assert the applicability of the statute of limitations to the extent based upon conduct occurring prior to May 25, 2012.

Nevertheless, Plaintiffs argue that the continuing violation doctrine tolled the accrual of their IFOA claim until June 2016, when Defendants' alleged scheme ended. [167] at 5–6; [187] at 5–6.  The continuing violation doctrine provides that "where a

tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 827 (N.D. Ill. 2014) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 770 N.E.2d 177, 190 (Ill. 2002)). But the continuing violation doctrine "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005) (applying Illinois law). Rather, it applies only where the "pattern, course, and accumulation of the defendant's acts are relevant to the cause of action." *Kidney Cancer Ass'n v. N. Shore Cmty. Bank & Tr. Co.*, 869 N.E.2d 186, 194 (Ill. App. Ct. 2007). In *Rodrigue*, for example, the Seventh Circuit held that the continuing violation doctrine did not apply to toll the accrual of the statute of limitations for the plaintiff's conversion claim because "conversion does not depend on the cumulative nature" of the defendant's acts. 406 F.3d at 443.

Similarly, the IFOA does not require a plaintiff to demonstrate a pattern, course, or accumulation of conduct to prove a violation; rather, a plaintiff may prove a violation by pointing to a single occurrence. *See Setera v. Nat'l City Bank*, No. 07 C 2978, 2008 WL 4425446, at *3 (N.D. Ill. Sept. 26, 2008). The continuing violation thus does not apply to toll the accrual of the statute of limitations for Plaintifs' IFOA claim, and Defendants plausibly assert that the statute of limitations bars that claim

to the extent premised upon any allegations of misconduct occurring before May 25, 2012. Accordingly, this Court denies Plaintiffs' motions to strike Francione's and First Eagle's assertions of the statute of limitations as a partial bar to Count VIII.

### 4. State-Law Claims: Kelliher and Vihnanek

Like First Eagle and Francione, Kelliher and Vihnanek assert that the five-year statute of limitations under 735 ILCS 5/13-205 bars the state-law claims asserted against them in Counts VI (breach of fiduciary duty) and VII (conversion). [163] at ¶¶ 48–56; [165] at 6–7. Plaintiffs again move to strike on the basis that the continuing violation doctrine tolls the accrual of their state-law claims against Kelliher and Vihnanek. [212] at 4–7; [219] at 5–7.

But like the IFOA, neither breach of fiduciary duty nor conversion requires a plaintiff to prove an ongoing scheme or repeated conduct. *See Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (setting forth Illinois breach of fiduciary duty elements); *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 799 (N.D. Ill. 2015) (conversion elements). The continuing violation doctrine is thus similarly inapplicable to Plaintiffs' state-law claims against Kelliher and Vihnanek, and this Court will not preclude those Defendants from asserting the statute of limitations defense against the state-law claims.

### B. IFOA Defenses: First Eagle and Francione

First Eagle and Francione assert—as their second affirmative defenses—that 810 ILCS 5/4-406(c)-(d) bars Plaintiffs' recovery on their IFOA claim in Count VIII. [162] at ¶¶ 38–39; [164] at ¶¶ 38–39; [182] at 13. As explained above, the UCC, 810

ILCS 5/4-406, defines "the bank customer's responsibility to examine its statement of account from the bank and promptly discover and report any unauthorized payments," *Napleton*, 945 N.E.2d at 114, and bars a customer's claim if a bank acts in "good faith" when "paying the items on the statement," *Falk v. N. Tr. Co.*, 763 N.E.2d 380, 387 (Ill. App. Ct. 2001). Plaintiffs again move to strike based upon their argument that Defendants failed to plead they acted in good faith in processing payments. [187] at 10. For the reasons explained above, this Court finds no merit to this argument, and thus, denies Plaintiffs' motions as to Francione's and First Eagle's second affirmative defenses.

Next, First Eagle and Francione assert as their third affirmative defenses that Count VIII "is barred in whole or in part by the relevant provisions" of the IFOA. [162] at ¶ 41; [164] at ¶ 41. This affirmative defense is improper because Defendants only assert it to negate the bad faith element of Plaintiff's IFOA claim. [182] at 14. Because a proper affirmative defense cannot merely "controvert the plaintiff's proof," *see Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012), this Court strikes with prejudice Francione's and First Eagle's third affirmative defenses.

### C. Authorization Defenses: Francione and First Eagle

Plaintiffs next move to strike Francione's and First Eagle's fourth, fifth, sixth, and seventh defenses, which the parties collectively refer to as the "authorization defenses." [187] at 11–12; [182] at 16–17. For these authorization defenses, Francione and First Eagle assert that: (1) Plaintiffs authorized Kelliher's and Vihnanek's actions (part of Defendants' fourth affirmative defense); (2) Kelliher and

Vihnanek acted with actual authority (fifth affirmative defense) and apparent authority (sixth affirmative defense) on behalf of Plaintiffs in carrying out the banking transactions; and (3) Plaintiffs consented to Kelliher's and Vihnanek's activities (seventh affirmative defense). [162] at ¶¶ 42–54; [164] at ¶¶ 42–54.

In their brief, Francione and First Eagle concede that these defenses merely constitute "obstacles to Plaintiffs proving the bad-faith element of their IFOA claims and the willful blindness element of their RICO claim." [182] at 17. Because these affirmative defenses concededly only negate essential elements of Plaintiffs' claims, this Court must strike them as improper. *Winforge*, 691 F.3d at 872. This Court thus grants with prejudice Plaintiffs' motions as to Francione's and First Eagle's authorization defenses (fifth through seventh affirmative defenses, and part of fourth affirmative defenses).

### D.    Causation Defenses: All Defendants

Francione and First Eagle assert that lack of proximate causation (ninth affirmative defense) and intervening acts (tenth affirmative defense) bar Plaintiffs' RICO conspiracy claims. [162] at ¶¶ 57–60; [164] at ¶¶ 57–60; [182] at 17–18.[3] Similarly, Vihnanek asserts that lack of proximate causation (ninth affirmative defense) and intervening acts (eighth affirmative defense) preclude the state-law claims against him. [163] at ¶¶ 96–116. Kelliher also asserts that lack of proximate

---

[3] Although Francione and First Eagle plead these affirmative defenses as being relevant to both the RICO claim and state-law claims against them, they clarify in their brief that they only assert these defenses in response to the RICO conspiracy claims alleged against them.

causation precludes all claims against him. [165] at 14–15 (Kelliher's eleventh affirmative defense).

Proximate causation constitutes an essential element of Plaintiffs' RICO claims against all Defendants, *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018), as well as of Plaintiffs' breach of fiduciary duty and conversion claims against Kelliher and Vihnanek, *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (proximate causation constitutes an essential element of breach of fiduciary duty claim); *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1126 (Ill. 2015) (a plaintiff must prove proximate causation to prevail on an intentional tort under Illinois law). As such, the "lack of proximate causation" merely negates an element of each of these claims, and accordingly, fails to qualify as a proper affirmative defense. *Levin v. Abramson*, No. 18-CV-1723, 2020 WL 2494649, at *14 (N.D. Ill. May 13, 2020) (striking the defendant's assertion of "proximate causation" as an affirmative defense because the plaintiff bears the burden of proving that element).

Defendants' assertions of "intervening acts" suffer similar flaws. The concept of "intervening acts" relates to the element of causation. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs. & Abbvie Inc.*, 192 F. Supp. 3d 963, 970 (N.D. Ill. 2016) (an intervening factor can "interrupt the chain of causation" in RICO cases); *Fed. Deposit Ins. Corp. v. Chicago Title Ins. Co.*, No. 12-CV-05198, 2019 WL 1437873, at *8 (N.D. Ill. Mar. 31, 2019) (for Illinois tort claims, proof of an intervening act can negate a finding of proximate causation). Thus, while Defendants can defend themselves by pointing to intervening acts to defeat proximate causation, they may

14

not plead those intervening acts as affirmative defenses because those acts merely controvert an element of Plaintiffs' claims. *See, e.g., Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 11 C 7494, 2012 WL 1108424, at *1 (N.D. Ill. Apr. 2, 2012) (striking "intervening acts" affirmative defense).

Because neither "lack of proximate causation" nor "intervening acts" constitutes a proper affirmative defense, this Court strikes with prejudice: (1) Francione's and First Eagle's ninth and tenth affirmative defenses, (2) Kelliher's eleventh affirmative defense; and (3) Vihnanek's eighth and ninth affirmative defenses.

### E. Negligence Defenses: Kelliher

Next, Kelliher alleges that contributory and/or comparative negligence (twelfth affirmative defense) and Plaintiffs' "own negligence" (thirteenth affirmative defense) bar all of Plaintiffs' claims against him. [165] at 16–17. Both defenses are legally flawed.

First, Kelliher improperly asserts these defenses as to the RICO claims, because a RICO violation "involves intentional conduct" and thus cannot be defeated by proof of the victim's own negligence. *Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 90 C 7127, 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993).

Second, under Illinois law, a "victim's negligence is not a defense to an intentional tort." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir. 2004); *see also Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 376 (7th Cir. 2018). Thus, Kelliher also improperly asserts these affirmative defenses as to

Plaintiffs' state-law claims against him for conversion and breach of fiduciary duty—both of which Illinois recognize as intentional torts. *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 887 (7th Cir. 2017) (conversion); *Wedi Corp. v. Seattle Glass Block Window, Inc.*, No. 17-CV-06368, 2018 WL 1794771, at *3 (N.D. Ill. Apr. 16, 2018) (breach of fiduciary duty).

Because Kelliher cannot assert Plaintiffs' negligence as a defense to the claims against him, this Court strikes with prejudice Kelliher's twelfth and thirteenth affirmative defenses.

### F.    Failure to Mitigate:  All Defendants

All four Defendants claim that Plaintiffs failed to mitigate the damages stemming from their RICO and state-law claims.  [162] at ¶¶ 55–56 (Francione's eighth affirmative defense); [164] at ¶¶ 55–56 (First Eagle's eighth affirmative defense); [163] at ¶¶ 74–77 (Vihnanek's fifth affirmative defense); [165] at 13 (Kelliher's ninth affirmative defense).

Plaintiffs do not dispute that "failure to mitigate" qualifies as a proper affirmative defense to their RICO and state-law claims.  *See also, e.g.*, *Hernandez v. Balakian*, No. CVF06-1383OWW/DLB, 2007 WL 1649911, at *7 (E.D. Cal. June 1, 2007) (declining to strike a failure to mitigate affirmative defense to RICO claim); *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1017 (7th Cir. 2018) (observing that Illinois law recognizes failure to mitigate as an affirmative defense).

Plaintiffs instead argue that Francione and First Eagle fail to sufficiently plead that "their own *intentional* conduct did not contribute to the amount of damages

Plaintiffs have suffered." [187] at 16 (emphasis in original). This argument falls short, as a failure to mitigate affirmative defense necessarily focuses upon Plaintiffs' efforts—or lack of effort—to mitigate their damages. Regardless, Plaintiffs cite no authority requiring such pleading.

Plaintiffs also argue that Kelliher and Vihnanek failed to plead Plaintiffs' knowledge of Defendants' alleged fraud. [219] at 11–12; [212] at 8–9. This Court assumes that Plaintiffs refer to the principle under Illinois law that the duty to mitigate damages "does not arise until the party upon whom the duty is impressed is aware of facts which make the duty to mitigate necessary." *Straits Fin.*, 900 F.3d at 375 (quoting *Cont'l Concrete Pipe Corp. v. Century Rd. Builders, Inc.*, 552 N.E.2d 1032, 1042 (Ill. App. Ct. 1990)). Here, both Defendants plead such knowledge giving rise to the duty to mitigate by alleging that Plaintiffs possessed access to their accounts and knew of repeated and consistent irregularities occurring within those accounts. [163] at ¶ 76; [165] at 13. The law does not require Defendants to plead with any more specificity at this stage of the case. *See Dace v. Chicago Pub. Sch.*, No. 19 C 6819, 2020 WL 1861671, at *7 (N.D. Ill. Mar. 18, 2020) (courts "typically permit a conclusory failure to mitigate damages affirmative defense" because defendants only learn of facts relating to plaintiffs' mitigation efforts over the course of discovery). This Court thus declines to strike Defendants' failure to mitigate affirmative defenses.

### G. *In Pari Delicto* and Unclean Hands: All Defendants

In their twelfth affirmative defenses, Francione and First Eagle assert the

doctrine of *in pari delicto*, claiming that to the extent they are at fault, "Plaintiffs are equally at fault for their alleged injury, if not more so." [162] at ¶ 64; [164] at ¶ 64. Kelliher also asserts the affirmative defenses of *in pari delicto* (third affirmative defense) and unclean hands (tenth affirmative defense), [165] at 7–8, 13–14, and Vihnanek asserts unclean hands (seventh affirmative defense), [163] at ¶¶ 85–95.

The doctrines of *in pari delicto* and unclean hands both recognize that a "wrongdoer cannot recover compensation from a third party who may have made things worse or missed a chance to avert the loss." *Peterson v. McGladrey LLP*, 792 F.3d 785, 788 (7th Cir. 2015) (Illinois law); *see also Schlueter v. Latek*, 683 F.3d 350, 355–56 (7th Cir. 2012) (noting that the U.S. Supreme Court has equated the defenses of *in pari delicto* and unclean hands) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360–61 (1995)).

Plaintiffs argue that Defendants fail to sufficiently plead Plaintiffs' fault in incurring their losses. [187] at 17; [212] at 13–14; [219] at 7–8. Not so. Francione and First Eagle specifically detail Plaintiffs' ability to monitor and discover the alleged fraud perpetrated by Kelliher and Vihnanek; Plaintiffs' failures to implement any supervisory measures that could have detected the alleged fraud; and Plaintiffs' ignoring of various events—such as negative bank balances—that could have alerted them to any wrongdoing. [162] at ¶¶ 3, 26–27, 29; [164] at ¶¶ 3, 26–27, 29. Likewise, Kelliher and Vihnanek both assert that Plaintiffs possessed control over their own accounts and thus should have known that they suffered an injury each time one of the Defendants made an allegedly fraudulent withdrawal. [163] at ¶¶ 92–95; [165]

18

at 14. These allegations plausibly state the notion embodied in the *in pari delicto* and unclean hands doctrines that "when the plaintiff is as culpable as the defendant, if not more so, the law will let the losses rest where they fell." *Peterson*, 792 F.3d at 786 (internal quotation marks omitted). This Court thus denies Plaintiffs' motions as to Defendants' *in pari delicto* and unclean hands affirmative defenses.

### H.    Laches:  Kelliher and Vihnanek

Kelliher and Vihnanek both allege that the doctrine of laches bars all counts against them.  [165] at 8–9 (Kelliher's fourth affirmative defense); [163] at ¶¶ 78–84 (Vihnanek's sixth affirmative defense).

The doctrine of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002); *see also W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 678 (7th Cir. 2015) (under Illinois law, laches provides a defense when a party's failure to timely assert a right causes prejudice to the adverse party).  To properly plead laches, Defendants must allege: (1) an unreasonable delay despite having actual or constructive knowledge of a right; and (2) harm or prejudice to the party against which laches has been asserted.  *W. Bend Mut.*, 794 F.3d at 678 (Illinois law); *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002) (discussing the defense in relation to a federal cause of action).

Plaintiffs argue that Kelliher and Vihnanek both failed to plead the first element:  that Plaintiff had knowledge of facts supporting their claims.  [219] at 9;

19

[212] at 10–11. Again, not so. Defendants assert that Plaintiffs maintained access to their own bank accounts, and thus knew or should have known of each allegedly fraudulent transaction when it occurred.

Plaintiffs also argue that Vihnanek failed to allege that he suffered prejudice. [212] at 11. This Court agrees on this point, because Vihnanek's amended affirmative defenses lack any allegations describing any harm or prejudice Vihnanek suffered on account of Plaintiffs' purported delay in bringing suit. Vihnanek may replead this defense, if appropriate, to allege such prejudice.

For these reasons, this Court denies Plaintiffs' motion to strike Kelliher's fourth affirmative defense, and grants Plaintiffs' motion to strike Vihnanek's sixth affirmative defense without prejudice to Vihnanek's attempt to replead this defense.

## I. Equitable Estoppel: Francione, First Eagle, and Kelliher

Next, Francione and First Eagle assert, as their thirteenth affirmative defenses, that the doctrine of equitable estoppel bars Plaintiff from recovering on their claims because they provided "unfettered" control and authority to Kelliher and Vihnanek to manage their accounts. [162] at ¶¶ 68–73; [164] at 68–73. Kelliher also asserts as his fifth affirmative defense that equitable estoppel bars Plaintiffs' claims against him. [165] at 9–10.

To state an equitable estoppel affirmative defense to a federal claim, a defendant must allege: (1) a misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. *Kennedy v. United States*,

20

965 F.2d 413, 417 (7th Cir. 1992). Under Illinois law, a defendant must plead six elements: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. *W. Bent Mut.*, 794 F.3d at 679 (quoting *Geddes v. Mill Creek Country Club, Inc.,* 751 N.E.2d 1150, 1157 (Ill. 2001)).

As to Francione and First Eagle, Plaintiffs argue that these Defendants fail to adequately plead a misrepresentation. [187] at 16. Apparently conceding this point, Francione and First Eagle contend that they instead plead that Plaintiffs concealed material facts, such as that Kelliher and Vihnanek were convicted of bank fraud. [182] at 19 (citing, *e.g.*, [162] at ¶¶ 7–8). But federal law requires Defendants to plead an affirmative misrepresentation, not merely a concealment. *Kennedy*, 965 F.2d at 417. Moreover, under Illinois law, "there can be no concealment supporting an equitable estoppel claim unless there is an affirmative duty to speak." *PPM Fin., Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1092 (N.D. Ill. 2004), *aff'd*, 392 F.3d 889 (7th Cir. 2004). Defendants fail to plead or further explain why Plaintiffs would have had an affirmative duty to inform them of Kelliher's and Vihnanek's prior

convictions. This Court thus strikes without prejudice Francione's and First Eagle's thirteenth affirmative defenses.

Plaintiffs next argue that Kelliher fails to adequately allege the elements of equitable estoppel. [219] at 10. This Court disagrees. Kelliher bases his equitable estoppel affirmative defense upon allegations that he entered into oral loan agreements Plaintiffs: Under these loan agreements, Kelliher allegedly agreed to loan as-needed amounts to Plaintiffs so that they could meet their payment obligations to vendors and creditors; and, in exchange, Plaintiffs agreed to reimburse Kelliher when funds became available. [165] at 3–5. Kelliher asserts that Plaintiffs made misrepresentations to him by agreeing to the terms of the oral loan agreements when, in fact, they did not intend to honor those loan agreements; he also claims that he believed Plaintiffs' representations and thus relied upon them to his detriment; and he alleges that he has suffered prejudice because Plaintiffs have now sued him for conduct that he alleges was part and parcel of the parties' loan agreements. [165] at 10. These allegations sufficiently plead the elements of equitable estoppel under both federal and state law. This Court thus denies Plaintiffs' motion to strike Kelliher's fifth affirmative defense.

## J. Breach of Contract: Francione and First Eagle

As their fourteenth affirmative defenses, Francione and First Eagle allege that Plaintiffs' breach of their bank account agreements with First Eagle bars the claims against them. [162] at ¶¶ 17, 74–77; [164] at ¶¶ 17, 74–77. The parties do not dispute that breach of contract constitutes a proper affirmative defense to Plaintiffs' claims.

22

*See also, e.g.*, *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 861 (N.D. Ill. 2008) (courts recognize that breach of contract constitutes a proper affirmative defense) (citing *Carroll v. Acme–Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992)).

Plaintiffs ask this Court to strike Defendants' breach of contract affirmative defenses because Defendants did not allege that they acted in good faith, and because Defendants did not attach the relevant account agreements to their affirmative defenses. [187] at 17–18. Both arguments are baseless. First, no authority exists requiring a party to plead good faith when asserting breach of contract. Second, federal courts do not require a party asserting breach of contract to attach the contract to its pleading. *Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, No. 16 C 8727, 2020 WL 1445631, at *10 (N.D. Ill. Mar. 25, 2020); *Liu v. Nw. Univ.*, 78 F. Supp. 3d 839, 847 (N.D. Ill. 2015).

Plaintiffs also argue that Francione may not assert breach of contract because her allegations demonstrate that only First Eagle, not Francione, was a party to the agreements. [187] at 17; *see also* [162] at ¶ 76 (alleging that Plaintiffs' agreements were with First Eagle). And indeed, Illinois law requires a party claiming breach of contract to allege that she was a party to a contract, in privity with a party to a contract, or an intended third-party beneficiary. *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015).[4] Francione concedes in her brief that she asserts breach of contract only as an officer to First Eagle, [182] at 20 n.5, apparently

---

[4] Because the parties have not argued otherwise, this Court presumes that Illinois law applies to Defendants' breach of contract defense.

acknowledging that she was a party, in privity with a party, or an intended third-party beneficiary. Accordingly, this Court strikes her fourteenth affirmative defense with prejudice. First Eagle's fourteenth affirmative defense, however, stands.

### K. Consent: Kelliher and Vihnanek

Plaintiffs move to strike Kelliher's sixth affirmative defense and Vihnanek's fourth affirmative defense, both based upon the doctrine of "consent." [166] at 7–8; [169] at 5. Vihnanek alleges that Plaintiffs failure to "make any meaningful inquiry into Kelliher's conduct" notwithstanding their access to their accounts constituted consent, [163] ¶ 73, while Kelliher claims that loan agreements he entered into with Plaintiffs amounted to consent regarding Kelliher's actions, [165] at 10.

The parties focus their arguments upon the sufficiency of Defendants' pleading. But, more fundamentally, consent fails as a proper affirmative defense in the context of Plaintiffs' claims. The only claim for which consent might become relevant relates to Plaintiffs' conversion claim; that is, consent defeats merely an essential element of conversion in that there "can be no wrongful assertion of dominion and control, and thus no conversion, when property is *voluntarily* transferred to the defendant by the owner." *Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015, 1024 (N.D. Ill. 2009) (emphasis added). But as is the case with many of Defendants' asserted defenses, the concept of consent merely defeats an element of the claim, and thus, fails to qualify as a proper affirmative defense. This Court therefore strikes with prejudice Kelliher's sixth affirmative defense and Vihnanek's fourth affirmative defense.

L.     **Ratification: All Defendants**

Defendants all plead some form of ratification as an affirmative defense. In his seventh and fourteenth affirmative defenses, Kelliher contends: (1) alleged loan agreements between Kelliher and Plaintiffs demonstrate ratification, barring all Counts against Kelliher; and (2) Plaintiffs' failure "to review their own bank accounts and/or financial/bookkeeping records" renders them responsible for their own injuries on all counts against him. [165] at 11–12, 18. Vihnanek, in his third affirmative defense, alleges that Plaintiffs' failure to review their bank account and tax statements constituted acquiescence to Kelliher's and/or Vihnanek's actions and thus ratification of the transactions, thereby barring Plaintiffs' claims against him. [163] at ¶¶ 64–65. First Eagle and Francione both allege, as part of their fourth affirmative defenses, that Plaintiffs ratified Vihnanek's and Kelliher's actions by failing to take action when they possessed account statements, thus barring their RICO claims. [162] at ¶ 44; [164] at ¶ 44.

Plaintiffs argue that all Defendants fail to adequately plead the affirmative defense of ratification. [212] at 7; [219] at 10–11; [187] at 13–14. But ratification can constitute an affirmative defense to tort claims under Illinois law. *Williams Elecs. Games*, 366 F.3d at 573; *see Nat'l Accident Ins. Underwriters, Inc. v. Citibank, FSB*, 333 F. Supp. 2d 720, 725 (N.D. Ill. 2004). Under Illinois law, ratification occurs when a "principal learns of an unauthorized transaction, then retains the benefits of the transaction or takes a position inconsistent with nonaffirmation." *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 623 (N.D. Ill. 2003) (internal

quotation omitted), *aff'd sub nom. Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004). Moreover, a court can infer ratification "from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction." *Id.*

Here, as repeatedly discussed above, all Defendants allege that Plaintiffs knew of the allegedly fraudulent transactions yet sat back and allowed the Defendants to continue transacting over a six-year period. At this point in the proceedings, such allegations sufficiently allege acquiescence, after notice, to Defendants' alleged scheme, as required under Illinois law. This Court thus denies Plaintiffs' motions to strike Kelliher's seventh and fourteenth affirmative defenses, Vihnanek's third affirmative defense, and First Eagle's and Francione's fourth affirmative defenses to the extent based upon ratification.

### M. Waiver: Kelliher, First Eagle, Francione

Kelliher's eighth affirmative defense and First Eagle's and Francione's eleventh affirmative defenses allege the doctrine of waiver as a bar to the claims against them. [165] at 13; [164] at ¶ 62; [162] at ¶ 62. Waiver involves the voluntary relinquishment of a known right, claim, or privilege. *Vaughn v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988) (Illinois law); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 68 (D.D.C. 2004) (discussing waiver in reference to civil RICO claim).

Plaintiffs argue that Defendants insufficiently assert waiver because they do not allege a "voluntary intentional relinquishment of a known right." [166] at 8–9; [167] at 12; [168] at 12. This Court agrees as to Kelliher, because Kelliher fails to

allege what purported right Plaintiffs' relinquished. *See generally* [165]. Accordingly, this Court strikes without prejudice Kelliher's eighth affirmative defense.

In contrast, First Eagle and Francione allege that Plaintiffs' failure to investigate their finances amounts to waiver because they declined their right to monitor their accounts and to take any corrective actions. [164] at ¶ 62; [162] at ¶ 62. These allegations put Plaintiffs on notice of the exact alleged right they allegedly relinquished. Thus, this Court denies Plaintiffs' motion to strike First Eagle's and Francione's eleventh affirmative defenses.

## IV. Plaintiffs' and Non-parties' Motion to Clarify [243]

On August 14, 2020, this Court issued an order resolving certain discovery disputes, *see* [242], finding that the moving parties need not produce

> any records or "list of covered individuals" other than those either: (1) related to Larry Kelliher, Lenny Vihnanek, Karen Kelliher, Colin Kelliher or Mikki Francione directly; or (2) related to any corporations or business entities in which those individuals served as an officer, employee or beneficiaries; but this production does not include any records related to other corporations or business entities that those individuals may have belonged to via "any other manner" (i.e., in a manner other than serving as an officer, employee, or beneficiaries).

*Id.* Plaintiffs and non-parties AFO Dental Group, Ltd., d/b/a Augusta Dental Of Mundelein, Ltd., Bay Hill Dental, Ltd., Stillwater Dental Group, Ltd., and Pinehurst Smile Center, Ltd.; Elite Dental, Ltd.; GSDC, Ltd., d/b/a Great Smiles Dental Center, Ltd.; SLL Management Corporation; and SLD Dental, Ltd., d/b/a Silver Lake Dental, Ltd. disagree about the interpretation of the word "employee" as used in the above order and move to clarify, *see* [243].

Plaintiffs say that Lenny Vihnanek and Larry Kelliher were employed by SLL Management, which in turn was employed by the non-party dental practices to manage their finances. *See* [243] at 3. As a result, production is required for all non-party dental practices that employed SLL. Non-parties maintain that production is required solely as to SLL Management and Stillwater Dental Group Ltd., as these were the only two entities to directly employ Vihnanek (SLL employed Kelliher but it is not clear that he was directly employed by any other non-party dental practice). *See id.* Plaintiffs have the right idea here; the purpose of the Court's order was to allow discovery of records of accounts that Vihnanek and Kelliher accessed and controlled through their employment. Plaintiffs' interpretation achieves that purpose; non-parties interpretation does not. Accordingly, the Court clarifies that its prior order directs production of discovery from entities that employed, directly or indirectly, Vihnanek and Kelliher.

## V.     Conclusion

For the reasons stated above, this Court grants in part and denies in part Plaintiff's motions to strike [166] [167] [168] [169].

Kelliher's first, second, third, fourth, fifth, seventh, ninth, tenth, and fourteen affirmative defenses stand; Kelliher's sixth, eleventh, twelfth, and thirteenth affirmative defenses are stricken with prejudice; and Kelliher's eighth affirmative defense is stricken with leave to replead.

Vihnanek's first, second, third, fifth, and seventh affirmative defenses stand; Vihnanek's fourth, eighth, and ninth affirmative defenses are stricken with prejudice; and Vihnanek's sixth affirmative defense is stricken with leave to replead.

First Eagle's first, second, fourth (to the extent based upon ratification), eighth, eleventh, twelfth, and fourteenth affirmative defenses stand; First Eagle's third, fourth (to the extent based upon authorization), fifth, sixth, seventh, ninth, and tenth affirmative defenses are stricken with prejudice; and First Eagle's thirteenth affirmative defense is stricken with leave to replead.

Francione's first, second, fourth (to the extent based upon ratification), eighth, eleventh, and twelfth affirmative defenses stand; Francione's third, fourth (to the extent based upon authorization), fifth, sixth, seventh, ninth, tenth, and fourteenth affirmative defenses are stricken with prejudice; and Francione's thirteenth affirmative defense is stricken with leave to replead.

Any amended affirmative defenses shall be filed by October 2, 2020. All other dates and deadlines stand.

Finally, the Court grants Plaintiffs' and non-parties' motion to clarify [243] and clarifies that its prior order [242] directs production of discovery from entities that employed, directly or indirectly, Vihnanek and Kelliher.

Dated: September 17, 2020

Entered:

John Robert Blakey
United States District Judge